WO                                                                                           SH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Adam Paul Blomdahl, | No. CV 19-00227-PHX-MTL (DMF) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Jaffe, et al., | |
| Defendants. | |

Plaintiff Adam Paul Blomdahl, who is currently confined in Arizona State Prison Complex (ASPC)-Florence, Browning Unit in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983.[1] Defendants move for summary judgment and Plaintiff opposes. (Docs. 57, 60.)[2] Also before the Court are Plaintiff's Motion for Joinder of Parties (Doc. 68) and Motion for Sanctions (Doc. 74).

**I.    Background**

Upon screening Plaintiff's First Amended Complaint (Doc. 7) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourteenth Amendment conditions-of-confinement claim against Maricopa County Health Services Psychiatrist Dr. Jaffe in Count Two and a Fourteenth Amendment excessive force claim against

---

[1] The events that gave rise to Plaintiff's claims in this action took place while Plaintiff was confined at the Maricopa County Fourth Avenue Jail in Phoenix, Arizona. (*See* Doc. 7 at 1.)

[2] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 59.)

Maricopa County Sheriff's Office (MSCO) Sergeant Shamrock in Count Three. (Doc. 8.) The Court directed Defendants Jaffe and Shamrock to answer and dismissed the remaining claims and Defendants. (*Id.*)

In Count Two, Plaintiff alleges that in October 2016, while he was confined at the Maricopa County Fourth Avenue Jail, Defendant Jaffe had him moved out of the jail's psychiatric unit and placed into a "flat cell" in which Plaintiff did not have a working toilet or shower and was deprived of clothing, reasonable shelter, sanitation, medical care, and safety. (Doc. 7 at 11–12.) In Count Three, Plaintiff alleges that when he refused to be moved from close custody back to general population in June 2017, he was beaten and pepper sprayed by several detention officers at Defendant Shamrock's orders. (*Id.* at 19–20.)

Defendants now move for summary judgment on the grounds that Plaintiff failed to exhaust the available administrative remedies as to his claims in Counts Two and Three, that his claim in Count Two is barred by the applicable statute of limitations, and that Defendant Shamrock was not present during the events that gave rise to Plaintiff's claims. (Doc. 57.)

**II.     Motion for Joinder of Parties**

Plaintiff moves to add new Defendants to this action and to consolidate this action with *Blomdahl v. Jones, et al*, 20-CV-01207-MTL-DMF. (Doc. 68.) Plaintiff previously sought to add new Defendants to this action, and the Court determined that the request was untimely and denied the motion. (Docs. 61, 65.) Plaintiff's attempt to add new Defendants is still untimely and will be denied again. Further, the Court has broad discretion when deciding a motion to consolidate cases under Rule 42(a) of the Federal Rules of Civil Procedure. The Court, in its discretion, declines to consolidate this case with 20-CV-01207 because these two cases are in entirely different procedural positions. The instant case was filed nearly two years ago and summary judgment briefing has been completed. In contrast, the Defendant in 20-CV-01207 was just recently served, and a scheduling order has not been issued. It would not promote the conservation of judicial resources to

consolidate these cases at this time. *See* Fed. R. Civ. P. 42(a)(3) (consolidation of cases may be warranted "to avoid unnecessary cost or delay"). Nor would consolidation secure a speedy determination of the present action, which has already incurred significant delays. *See* Fed. R. Civ. P. 1 (the procedural rules should be "administered to secure the just, speedy, and inexpensive determination of every action"). Accordingly, the Motion for Joinder of Parties will be denied.

### III.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**IV.     Exhaustion**

The Court will first address Defendants' argument that Plaintiff failed to exhaust his claims in Counts Two and Three.

**A.      Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of

exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### B. MCSO Grievance Procedure

The Fourth Avenue Jail's administrative remedy process is set forth in MCSO Policy DJ-3 and in Section 13 of the MCSO Rules and Regulations for Inmates. (Doc. 58-1 at 25–28 (Defs.' Ex. 2), 58–66 (Defs.' Ex. 4, Attach. 1)).) There are five steps in the Inmate Grievance Procedure; the first three steps are documented on one form, the Grievance Form. (*Id.* at 26.) The inmate initiates the process by submitting the Grievance Form to an officer, who attempts to resolve the issue and documents on the Grievance Form what action was taken. (*Id.* at 26, 59–60.) If the issue is not resolved, the officer informs the inmate that the Grievance Form will be forwarded to a shift supervisor. (*Id.*) The shift supervisor attempts to resolve the grievance and documents on the Grievance Form what action was taken and whether the issue is resolved. (*Id.*) If the issue is not resolved, the grievance is forwarded as a formal grievance to the Hearing Unit Sergeant, who attempts to resolve the issue. (*Id.* at 26, 61.) A hearing sergeant responds to the grievance and documents on the Grievance Form the actions taken and whether the issue is resolved or not. (*Id.*)

If the issue is still not resolved, the fourth step provides for the inmate to appeal to the jail commander via a separate form, the Institutional Grievance Appeal Form. (*Id.*) The jail commander's response and recommended action is documented on this same form. (*Id.* at 26, 62.) The Appeal Form also includes a space to mark either that the grievance is resolved and should be forwarded to the Bureau Hearing Unit for filing, or that the grievance is unresolved and should be forwarded to the External Referee, which is the final step in the inmate grievance procedure. (*Id.*)

If the inmate seeks to appeal, he will be given an External Grievance Appeal Form, to which he must attach copies of the Inmate Grievance Form and the Institutional

Grievance Appeal Form. (*Id.*) The External Grievance Appeal Form is then forwarded to the Bureau Hearing Unit Commander who will either determine that the appeal lacks merit or that it should be forwarded to the External Referee. (*Id.* at 26, 63.) If the unit commander decides not to forward the appeal to the External Referee, the grievance process is concluded. (*Id.*) Otherwise, the appeal is forwarded to the External Referee whose response and written decision end the formal inmate grievance procedure. (*Id.* at 27, 64.)

If a staff member fails to respond to a grievance within the time allowed, the inmate may proceed to the next step in the grievance process. (*Id.* at 25.)

All inmates are notified of the grievance procedures when they receive a copy of the MCSO Rules and Regulation for Inmates. (Doc. 58-1 (Defs' Ex 4, Bretado Decl. ¶ 4).) On August 20, 2016, Plaintiff was given a copy of the MCSO Rules and Regulations for Inmates, but Plaintiff was unable to sign the receipt page because he was in a safe cell and was not allowed to have a pencil at that time. (Doc. 58-1 at 52 (Defs.' Ex. 3).) Plaintiff received another copy of the MCSO Rules and Regulations for Inmates on July 5, 2017, and he was able to sign for receipt of this copy. (*Id.* at 117 (Defs.' Ex. 5).)

**C.     Discussion**

Plaintiff was a pre-trial detainee in MCSO custody from August 19, 2016 until he was sentenced to the Arizona Department Corrections on November 22, 2019. (Doc. 58 (Defs.' Statement of Facts) ¶ 6.) Plaintiff filed the First Amended Complaint in this action on February 19, 2019. (Doc. 7.) Defendants have presented Plaintiff's MCSO grievance records, which indicate that Plaintiff filed eight grievances between August 19, 2016—the day he was booked into MCSO custody—and February 19, 2019—the day he filed the First Amended Complaint. (*See* Doc. 58-1 at 4–6 (Defs.' Ex. 1).) These eight grievances pertained to the following: Plaintiff's request to see a different doctor; Plaintiff's phone call with his attorney being interrupted during a lockdown; Plaintiff not receiving the Wall Street Journal; Plaintiff being denied dayroom; Plaintiff asking for safe drinking water; Plaintiff asking for a haircut; and Plaintiff challenging a disciplinary report and being

harassed by another inmate. (*Id.* at 4.) None of the grievances pertained to Plaintiff's claims that Defendant Jaffe had him placed in a flat cell under inhumane conditions or that Defendant Shamrock used excessive force against him. (*See id.*) Thus, Defendants have met their initial burden at summary judgment of showing that there was an administrative remedy available to Plaintiff as outlined in MCSO Policy DJ-3 and that Plaintiff did not complete this process with regard to his claims against Defendants. Accordingly, the burden shifts to Plaintiff to either show that he exhausted his threat-to-safety claim or that the administrative remedy was effectively unavailable to him. *Albino*, 747 F.3d at 1172.

Plaintiff argues that the grievance process was unavailable to him and that "just because Rules and Regulations for Inmates . . . says that grievance forms are available, does not mean at the time Plaintiff was in [the MCSO mental health unit], that Defendants . . . allowed him to file a grievance." (*Id.* at 13.) Plaintiff contends that he did not have access to the grievance process while he was housed in the psychiatric unit/flat cell and that he "had a grievable issue for days and weeks, but Defendants/Jaffe would not allow or 'assist him' in the grievance process" and did not give him a pencil to complete a grievance form. (*Id.*) But the evidence shows that Plaintiff was released from the psychiatric unit/flat cell back to the general population on November 4, 2016, and he did not submit a grievance regarding his claim against Defendant Jaffe upon being returned to the general population. (Doc. 58 ¶ 13.)

Plaintiff argues that he did not sign for receipt of a copy of the MCSO Rules and Regulation for Inmates until July 5, 2017 and was therefore not aware of the grievance process until then. (Doc. 60 at 12, 15.) But this argument is belied by the uncontroverted evidence which shows that Plaintiff filed a grievance in March 2017 asking to be seen by a different doctor. (Doc. 58-1 at 4.) Thus, Plaintiff was aware of the grievance process by the time the events regarding his claim against Defendant Shamrock took place in June 2017. However, Plaintiff asserts that the grievances he filed regarding his excessive force claim against Defendant Shamrock "were not logged by Defendants and/or were lost by his lawyer." (Doc. 60 at 14.) Plaintiff does not state when he filed these grievances, who

he gave them to, or what the grievances said. Further, the grievance process clearly states that if an inmate does not receive a response at any stage of the grievance process, the inmate may move on to the next step.

Construing the evidence in Plaintiff's favor, Plaintiff did not receive a copy of the MCSO Rules and Regulations for Inmates when he was booked into the Maricopa County Jail in August 2016, and he was not aware of the grievance process until at least March 2017, when he filed his grievance asking to see a different doctor. This was well after his claim against Defendant Jaffe arose in October 2016. On these facts, the Court finds that Plaintiff's failure to exhaust his claim against Defendant Jaffe is excused.

However, the unrefuted evidence shows that Plaintiff was aware of the grievance process by the time his claim against Defendant Shamrock arose in June 2017, and Plaintiff has not shown that the grievance process was unavailable to him as to this claim. Even if his grievance against Defendant Shamrock was not logged, the grievance procedure permitted Plaintiff to proceed to the next step in the process once the response deadline had passed, and Plaintiff failed to do so. Accordingly, Plaintiff's failure to exhaust his claim against Defendant Shamrock is not excused, and that claim must be dismissed.[3]

**V.     Statute of Limitations**

Defendants next argue that Plaintiff's claim against Defendant Jaffe is barred by the two-year statute of limitations.

**A.     Legal Standard**

Title 42 U.S.C. § 1983 does not include its own statute of limitations. *TwoRivers*, 174 F.3d at 991. Therefore, federal courts apply the statute of limitations governing personal injury claims in the forum state, "along with the forum state's law regarding

---

[3] Even if Plaintiff had exhausted his claim against Defendant Shamrock, or if he was excused from doing so, Plaintiff concedes to Defendants' argument that Defendant Shamrock was not present when excessive force was purportedly used against Plaintiff in June 2017. (Doc. 60 at 16; Doc. 58 ¶ 11 (showing that Defendant Shamrock was on scheduled vacation during the excessive force incident).) Plaintiff admits that he misidentified Defendant Shamrock as being one of the officers who used excessive force against him in June 2017. (Doc. 60 at 16.) Accordingly, Defendant Shamrock is also entitled to summary judgment on the merits of Plaintiff's claim in Count Three.

tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citation omitted). In Arizona, the limitations period for personal injury claims is two years. *TwoRivers*, 174 F.3d at 991; *see also* Ariz. Rev. Stat. § 12-542 (providing that actions for personal injury must be commenced within two years after the cause of action accrues). "If the defendant establishes a *prima facie* case that the statute was applicable, the burden of going forward shifts to the plaintiff to show its claims fall within a recognized exception to the statute." *Kiley v. Jennings, Strouss & Salmon*, 927 P.2d 796, 799 (Ariz. Ct. App. 1996).

Although the statute of limitations applicable to § 1983 claims is borrowed from state law, federal law continues to govern when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *TwoRivers*, 174 F.3d at 991. Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers*, 174 F.3d at 991; *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).

**B.     Discussion**

The evidence shows that Plaintiff "knew of the injury" that is the basis of his claim against Defendant Jaffe no later than October 2016 when Plaintiff was placed in the flat cell in what he considered to be inhumane conditions. (*See* Doc. 7 at 11 (alleging that "during most of the month of October 2016 the Plaintiff had spent abandoned, isolated and desolate inside a flat cell at the "P3" psych unit").) Thus, Plaintiff's claim against Defendant Jaffe accrued at least by October 31, 2016, and any claim against Defendant Jaffe needed to be filed no later than October 31, 2018. It is undisputed that Plaintiff first named Defendant Jaffe as a Defendant in this action in the original Complaint, which Plaintiff filed on January 11, 2019, well after the two-year statutory period for filing that claim had elapsed. Defendants have therefore made a *prima facie* case that Plaintiff's claims against Defendant Jaffe are barred by the applicable statute of limitations. To avoid dismissal, Plaintiff must show that his claim falls within a recognized exception to that statute. *Kiley*, 927 P.2d at 799. Plaintiff argues that the statutory period for filing his claim

against Defendant Jaffe was equitably tolled because he was of unsound mind. (Doc. 60 at 11.)

If a person is of unsound mind when a cause of action accrues, the statute of limitations is tolled for the period of disability, and after the disability is removed, the person will have the same time allowed to others. Ariz. Rev. Stat. § 12–502. This rule arises from the equitable principle that "it is unfair to bar an action in which the plaintiff is mentally disabled and thus unable to appreciate *or pursue* his or her legal rights." *Doe v. Roe*, 955 P.2d 951, 963 (Ariz. 1998) (emphasis in original) (internal citations omitted). "In Arizona, unsound mind occurs when the 'person is unable to manage his affairs or to understand his legal rights or liabilities.'" *Id.* (quoting *Allen v. Powell's Int'l, Inc.*, 518 P.2d 588, 589 (Ariz. App. 1974)). The plaintiff bears the burden of "set[ting] forth specific facts—hard evidence—supporting the conclusion of unsound mind." *Doe*, 955 P.2d at 964. But where a plaintiff produces "credible evidence" of unsound mind, he is not required to discredit all contrary evidence, because the contrary evidence merely raises a question of fact for a jury to decide. (Doc. 138 at 10.) *Id.*; *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 772 (D. Ariz. 2012), *on reconsideration in part* (May 30, 2012) (where the plaintiff produced credible evidence of his inability to function on a day-to-day basis, questions of fact as to unsound mind precluded summary judgment).

Plaintiff argues that the limitations period was tolled from October 20, 2016 through January 11, 2017 because during this time, he was being examined for competency to stand trial in his state court criminal case. (Doc. 60 at 11.) The Court first looks to whether Plaintiff has produced "specific facts" that he was unable to manage his affairs during this time. As to this period, Plaintiff points to the following: (1) an October 11, 2016 Order in his criminal case granting a full Rule 11 competency evaluation; and (2) a January 3, 2017 Order in his criminal case finding Plaintiff competent to stand trial. (Doc. 60 at 44–46, 48 (Pl.'s Ex. 6).) Plaintiff contends that "his emotional distress[] continued well into the duration of his stay as a pre-trial detainee" and that he "continued to suffer [emotional

distress] even after he left the flat cell on 11/4/16 and the emotional distress continued even after [the Rule 11 proceedings]." (*Id.* at 11.)

Plaintiff's evidence only shows that he was evaluated for competency between October 20, 2016 and January 11, 2017. It does not prove that he was actually incompetent or that he was unable to manage his affairs during this time, and in fact, Plaintiff's evidence shows that he was ultimately found competent. For equitable tolling to apply, "it is insufficient to summarily claim 'inability to bring the action.'" *Doe*, 955 P.2d at 964 (quoting *Florez v. Sargeant*, 917 P.2d 250, 255 (Ariz. 1996)). "[T]he policy of protecting defendants against stale and fraudulent claims cannot be overcome by conclusory averments such as assertions that one was unable to manage daily affairs or understand legal rights and liabilities." *Doe,* 955 P.2d at 964. Plaintiff has not provided any sworn testimony regarding his purported inability to manage his affairs, nor has he provided any other competent evidence, such as witness declarations, medical records, or medical opinion evidence to support his assertions. The evidence Plaintiff relies on is too general to show that he was unable to manage his affairs for purposes of establishing the unsound mind exception, especially where he was determined to be competent to stand trial. Moreover, Plaintiff admits that he only pursued the competency proceedings so that he could have "a safe place to go, so he could focus on his case[.]" (Doc. 60 at 7.) Although Plaintiff states that he suffered from "emotional distress" throughout the two-year statute of limitations period, this statement is too vague and conclusory to show that he was unable to manage his affairs. Plaintiff does not point to any non-conclusory statements about how his condition affected his daily functioning. Absent any such facts, Plaintiff fails to produce "credible evidence" that his emotional distress rendered him incapable of managing his affairs, such that he could not have brought his claim against Defendant Jaffe during the relevant statutory period.

On this record, Defendants have met their burden on summary judgment of showing that Plaintiff's claims against Defendant Jaffe are barred by the applicable two-year statute of limitations, and Plaintiff has not shown or created a triable issue of fact that he is entitled

to an exception based on unsound mind or any other equitable doctrine that would render his claim timely filed. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on statute of limitations grounds and dismiss Defendant Jaffe from this action.[4]

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 57), Plaintiff's Motion for Joinder of Parties (Doc. 68), and Plaintiff's Motion for Sanctions (Doc. 74).

(2) Plaintiff's Motion for Joinder of Parties (Doc. 68) and Motion for Sanctions (Doc. 74) are **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. 57) is **granted** as discussed herein.

(4) The Clerk of Court must terminate the action and enter judgment accordingly.

Dated this 4th day of November, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

---

[4] Because Plaintiff's claim against Defendant Jaffe is barred by the statute of limitations, the Court will deny Plaintiff's Motions for Sanctions, in which Plaintiff seeks disclosure of the "jail videos" from his interactions with Defendant Jaffe since these videos were not necessary to the resolution of the statute of limitations issue. (*See* Doc. 74 at 1.)